## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

PARIS WILSON,

  Plaintiff,

   v.         Civil Action No.  04-1814 (JDB)

DRUG ENFORCEMENT
ADMINISTRATION,

  Defendant.

## MEMORANDUM OPINION

  This matter is before the Court on defendant's renewed summary judgment motion, as supplemented, and plaintiff's opposition.  Having considered the motion and the entire record of the case, the Court will grant summary judgment for defendant.

### I.  BACKGROUND

  Briefly stated, pursuant to the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, plaintiff requested the following records from the Drug Enforcement Administration ("DEA"):

   1)  Copy of the Case Agent's investigative notes, surveillance logs, and criminal complaints that defines [sic] the criminal conspiracy and federal offenses by date, time, and place, for Paris L. Wilson.

   2)  Copy of drug laboratory report containing drug type and drug amount attributed to Paris L. Wilson.

   3)  Copy of all records and D.E.A. files pertaining to Paris L. Wilson.

Wassom Decl., Ex. A (FOIA request signed on December 23, 2003).[1]  Plaintiff filed the instant

action after the DEA failed to make a determination on his request within 20 working days, as is

required under 5 U.S.C. § 552(a)(6)(A)(i).  *See* Compl. ¶ 6.

## II.  DISCUSSION

### A.  Summary Judgment Standard

The Court grants a motion for summary judgment if the pleadings, depositions, answers

to interrogatories, and admissions on file, together with affidavits, show that there is no genuine

issue of material fact, and that the moving party is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56(c).  The moving party bears the burden of demonstrating an absence of a genuine

issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Factual assertions in

the moving party's affidavits may be accepted as true unless the opposing party submits his own

affidavits or documentary evidence to the contrary.  *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir.

1992).

In a FOIA case, the Court may grant summary judgment based on the information

provided in affidavits or declarations when the affidavits or declarations describe "the documents

and the justifications for nondisclosure with reasonably specific detail, demonstrate that the

information withheld logically falls within the claimed exemption, and are not controverted by

either contrary evidence in the record nor by evidence of agency bad faith."[2]  *Military Audit*

_____

[1]     The first declaration of Leila Wassom was submitted in support of defendant's
first summary judgment motion [Dkt. #12].  The Court denied that motion without prejudice on
May 24, 2005 [Dkt. #17].

[2]     In support of its motion, defendant submits the declarations of Leila I. Wassom, a
Paralegal Specialist assigned to the Freedom of Information Operations Unit ("SARO"),

(continued...)

*Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).   Such affidavits or declarations are

accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims

about the existence and discoverability of other documents.'"   *SafeCard Servs., Inc. v. SEC*, 926

F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771

(D.C. Cir. 1981)).

### B.  Adequacy of Search

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material

doubt that its search was 'reasonably calculated to uncover all relevant documents.'"   *Valencia-*

*Lucena v. United States Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v.*

*Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)); *see Campbell v. United States Dep't of*

*Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998) (FOIA requires agency to conduct search using

methods reasonably expected to produce requested information).   The agency bears the burden of

showing that its search was calculated to uncover all relevant documents.   *Steinberg v. United*

*States Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994).

---

[2](...continued)
Freedom of Information and Records Management Section, at DEA Headquarters in Washington,
DC. Wassom Decl. ¶ 1.  Her professional responsibilities include the review of requests to DEA
for information under the Freedom of Information and Privacy Acts for litigation purposes.  *Id.*
¶ 2.  She is familiar with DEA's policies and procedures for the processing and release of
information under the Freedom of Information and Privacy Acts, as well as the application of
exemptions under these Acts.  *Id.* ¶ 3.

    In addition, defendant submits the declaration of William C. Little, Jr., an attorney
assigned to the Office of Chief Counsel, Administrative Law Section, of the DEA.  Little Decl.
¶ 2.  He provides litigation support for matters arising under the FOIA in which the DEA is an
interested party.  *Id.* ¶ 3.  Litigation support responsibilities require that he review the initial
processing and appeal of FOIA requests to the DEA to determine whether the agency's responses
comply with the FOIA and agency procedures.  *Id.* ¶ 4.  He states that he performed litigation
review in this case.  *Id.* ¶ 9.

To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search.  *See Perry v. Block*, 684 F.2d 121, 126-27 (D.C. Cir. 1982) (per curiam).  In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with the FOIA.  *Id*. at 127.  If the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper."  *Truitt v. Dep't of State*, 897 F.2d at 542.

DEA's Investigative Reporting and Filing System ("IRFS") "contains <u>all</u> administrative, general and investigative files compiled by DEA for law enforcement purposes."  Wassom Decl. ¶ 18 (emphasis in original).  IRFS components include headquarters files and investigative case files established by the field office conducting an investigation.  Supp. Wassom Decl. ¶¶ 6-8. Investigative case files are "titled according to the name of the principal suspect violator or entity known to DEA at the time the file is opened."  *Id.* ¶ 8.  Information generated during an investigation "is systematically gathered and included in the investigative case file."  *Id.*

The means by which to retrieve information from the IFRS is through its index, the Narcotics and Dangerous Drugs Information System ("NADDIS").  Wassom Decl. ¶ 19.  A NADDIS search "points to investigative files and particular Reports of Investigation (ROI) which contain information regarding a particular individual or subject of an investigation."  *Id.* Information about an individual is retrieved in NADDIS by his name, Social Security number, and date of birth.  *Id.*

DEA staff at the agency's Freedom of Information Operations Unit ("SARO") determined that the IRFS was the only system of records likely to contain information responsive to plaintiff's FOIA request.  Wassom Decl. ¶ 18.  On February 20, 2004, staff conducted a NADDIS

search using plaintiff's name, Social Security number, and date of birth as search terms.  *Id.* ¶ 19; Supp. Wassom Decl. ¶ 14.  This search yielded 16 pages of responsive records.  *Id.*, ¶ 14.  Of these 16 pages, the DEA withheld four pages in full, and released 12 pages in part, citing Exemptions 2, 7(C), 7(D), and 7(F).  Wassom Decl. ¶ 10 & Ex. E (February 26, 2004 letter from K.L. Myrick).

The declarant explains that DEA staff performed a litigation review of the SARO file pertaining to plaintiff's FOIA request after this civil action was filed.  Little Decl. ¶¶ 6, 9-10.  In a litigation review, the FOIA request is reviewed to determine whether the agency has searched "all the places where records were reasonably likely to be found[,] . . . and that the appropriate withholdings were made with regard to all the responsive material located."  *Id.* ¶ 12.  When a deficiency is discovered, affirmative steps are taken to correct it.  *Id.* ¶ 14.  In this case, litigation review of plaintiff's request led to supplemental releases of information.

It was determined that a proper search had not been conducted as to plaintiff's request for "[c]opies of the Case Agent's investigative notes, surveillance logs, and criminal complaints that defines [sic] the criminal conspiracy and federal offenses by date, time, and place, for Paris L. Wilson."  Little Decl. ¶ 15.  DEA staff contacted the Minneapolis, Minnesota field division, which located a relevant file and forwarded a copy of it to SARO.[3]  *See* Wassom Decl. ¶¶ 11, 20.  The Minneapolis file contained 71 pages of records responsive to plaintiff's FOIA request.[4]  *Id.*

---

[3]      Neither declarant expressly states what search result prompted staff to contact the Minneapolis field office.

[4]      The Headquarters file is DEA's official file.  Supp. Wassom Decl.,¶ 7. "[I]nvestigative files maintained in the field are, by DEA practice, procedures, and instructions, a duplicate of the Headquarters file."  *Id.*

¶ 11.

On December 28, 2004, the DEA referred five pages to the United States Marshals Service and two pages to the Executive Office for United States Attorneys for processing and direct response to plaintiff.[5]  Wassom Decl. ¶ 12.  The EOUSA released two pages of records in part, after having redacted information under Exemptions 7(C) and 7(F).  *Id*. ¶ 15 & Ex. I.  The United States Marshals Service released three pages in part, after having redacted information under Exemption 7(C).  *Id.* ¶ 16 & Ex. J.

Of the remaining pages, on December 30, 2004, the DEA released seven pages in full and 22 pages in part, and withheld 37 pages in full under Exemptions 7(C) and 7(F).  Wassom Decl. ¶ 13 & Ex. G.  On February 2, 2005, pursuant to litigation review, the DEA released four pages in full.  *Id*. ¶ 17.  These pages, which comprised an unsigned copy of the Superceding Indictment in plaintiff's criminal case, a public record, previously had been released in part on December 30, 2004.  *Id.*; Little Decl. ¶ 19.

With respect to plaintiff's request for laboratory reports, the declarant explained that such records "are retrieved by the particular laboratory that conducted the examination of the evidence."[6]  Supp. Wassom Decl. ¶ 15.  Because plaintiff had not identified which of the nine DEA laboratories conducted the analysis and had not provided an investigation or investigatory exhibit number, "there was insufficient information to retrieve any laboratory records that related

---

[5]     There is some question as to whether the DEA referred three, four, or five pages to the United States Marshals Service.  The declarant states that five pages were referred.  Wassom Decl. ¶ 12.  The referral letter indicates that four pages were referred.  *See id.* Ex. F.  The Marshals Service's response to plaintiff reflects receipt of three pages.  *See id.* Ex. J.

[6]     DEA staff had contacted DEA's North Central Laboratory in Chicago, but no responsive records were found there.  Wassom Decl. ¶ 21.

to any drug evidence attributable to the plaintiff based upon his request." *Id.* ¶ 16.  Upon further

inspection of the DEA investigative case file pursuant to the Court's May 24, 2005 Order, it was

determined that the file contained no DEA standard forms to indicate the collection, purchase,

seizure, or disposition of drug or non-drug evidence by the agency.  *Id.* ¶ 17.  However, the file

contained a Report of Investigation dated December 7, 1999 stating that "[a]ll evidence in this

investigation was maintained in the custody and control of the Minnesota Bureau of Criminal

Apprehension and will be destroyed in accordance with their policies and procedures."  *Id.* Ex.

A.

Plaintiff challenges the adequacy of the DEA's search, arguing that the agency did not

produce all of the records he requested in their entirety.  *See generally* Pl.'s Opp.  He also

specifically objects to the release of a copy of the superceding indictment "because the

indictment lacked both the signatures of the U.S. Attorney and Grand Jury foreperson."  *Id.* at 3;

Pl.'s Supp. Opp. at 3.  Neither argument has merit.

The adequacy of an agency's search is not determined by the results of the search or by

the quantity of information ultimately released.  Rather, "the adequacy of a FOIA search is

generally determined . . . by the appropriateness of the methods used to carry out the search."

*Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003); *see Cleary,*

*Gottlieb, Steen & Hamilton v. Dep't of Health and Human Serv.*, 844 F.Supp. 770, 777 n. 4

(D.D.C. 1993) (the search, not the results of the search, must be reasonable).  The agency's search

is not presumed unreasonable because it fails to find all relevant material.  *See Steinberg*, 23 F.3d

at 551 (the question is not "whether there might exist any other documents possibly responsive to

the request, but rather whether the search for those documents was adequate"); *see also Meeropol*

*v. Meese*, 790 F.2d 942, 952-53 (D.C. Cir. 1986).

The FOIA requires the agency to release records that it creates or obtains and that are under its control at the time the FOIA request is made. *See Katz v. Nat'l Archives and Records Admin.*, 68 F.3d 1438, 1440 (D.C. Cir. 1995) (quoting *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 145 (1989)). No agency is required to produce records that it does not possess. *See Rothschild v. Dep't of Energy*, 6 F.Supp. 2d 38, 40 (D.D.C. 1998). Defendant's declarations attest to the fact that a copy of the superceding indictment was located in the DEA's records. There is no requirement that an agency produce a signed copy of a document if such a document is not found in its records. Plaintiff's dissatisfaction with the document he received does not undermine the adequacy of defendant's search.

Furthermore, plaintiff fails to meet his evidentiary burden in challenging the adequacy of an agency's search. He must present evidence rebutting the agency's initial showing of a good faith search, and utterly fails to do so here. *See Maynard v. CIA*, 986 F.2d 547, 560 (1ˢᵗ Cir. 1993); *Weisberg v. United States Dep't of Justice*, 705 F.2d 1344, 1351-52 (D.C. Cir. 1983).

C. Exemptions

Under FOIA, an agency is obliged to make available to the public all records that are reasonably described in a written request, and are not exempt from disclosure. 5 U.S.C. § 552(a)(3)(A), (b). The DEA bears the burden of justifying its decision to withhold records or portions of records. 5 U.S.C. § 552(a)(4)(B). It must describe the records withheld, and show that the records fall within the claimed exemptions. *Canning v. United States Dep't of Justice*, 848 F.Supp. 1037, 1043 (D.D.C. 1994).

1. Exemption 2

Exemption 2 protects materials that are "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Generally, courts limit Exemption 2 protection to "trivial administrative matters of no genuine public interest" ("low 2" exempt information), and to information that, if disclosed, "may risk circumvention of agency regulation" ("high 2" exempt information). *Schiller v. NLRB*, 964 F.2d 1205, 1206 (D.C. Cir. 1992); *see Schwaner v. Dep't of the Air Force*, 898 F.2d 793, 795 (D.C. Cir. 1990).

The DEA withholds violator identifiers known as Geographical Drug Enforcement Program ("G-DEP") codes and NADDIS numbers under Exemption 2. Wassom Decl. ¶¶ 36-37. These identifiers "are part of DEA's internal system of identifying information." *Id.* ¶ 36. G-DEP codes "are assigned to all DEA cases at the time the case file is opened and indicate the classification of the violator, the types and amount[s] of suspected drugs involved, the priority of the investigation and the suspected location and scope of criminal activity." *Id.* ¶ 37(1). NADDIS numbers "are multi-digit numbers assigned to drug violators and suspected drug violators known to DEA." *Id.* ¶ 37(2). A NADDIS number is unique to the person to whom it is assigned. *Id.*

The declarant explains that release of G-DEP codes "would help identify priority given to narcotic investigations, types of criminal activities involved, and violator ratings." Wassom Decl. ¶ 36. With such information, a suspect could change his pattern of drug trafficking in order to avoid detection and apprehension. *Id.* The DEA thus justifies its decision to withhold G-DEP codes as "high 2" exempt information. *See Manna v. United States Dep't of Justice*, 832 F.Supp. 866, 872 (D.N.J. 1993) (concluding that release of G-DEP and NADDIS numbers would impede

investigative and law enforcement efforts), *aff'd*, 51 F.3d 1158 (3d Cir.), *cert. denied*, 516 U.S.

975 (1995); *see also Watson v. United States Dep't of Justice*, 799 F.Supp. 193, 195 (D.D.C.

1992) (recognizing that subjects could decode G-DEP and NADDIS numbers and change

activities "so as to evade detection").

NADDIS numbers are described as part of the DEA's internal system of identifying

information in which there is no public interest.  Wassom Decl. ¶ 36.  For this reason, this

information falls under the category of "low 2" exempt information.  The DEA's decision to

withhold it is proper.  Courts have found that there is no significant public interest in disclosure

of such identifying information.  *See Lesar v. United States Dep't of Justice*, 636 F.2d 472, 485-

86 (D.C. Cir. 1980).

## 2.  Exemption 7

Exemption 7 protects from disclosure "records or information compiled for law

enforcement purposes," but only to the extent that the production of such records would cause an

enumerated harm.  5 U.S.C. § 552 (b)(7); *see FBI v. Abramson*, 456 U.S. 615, 622 (1982).  Given

the nature of plaintiff's FOIA request and defendant's declarations, the DEA clearly meets the

threshold requirement that the records at issue were compiled for law enforcement purposes.

### a.  Exemption 7(C)

Exemption 7(C) protects from disclosure information in law enforcement records that

"could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5

U.S.C. § 552 (b)(7)(C).  In determining whether this exemption applies to particular material, the

Court must balance the interest in privacy of the individual mentioned in the record against the

public's interest in disclosure.  *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993).  It

is the "interest of the general public, and not that of the private litigant," that the Court considers in this analysis. *Brown v. FBI*, 658 F.2d 71, 75 (2d Cir. 1981) (citing *Ditlow v. Shultz*, 517 F.2d 166, 171-72 (D.C. Cir. 1975)). "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 282 (D.C. Cir. 1992) (quoting *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)).

The DEA has withheld the names, addresses, and other identifying information of third parties involved or associated with plaintiff. Wassom Decl. ¶ 38. Release of this information, the declarant explains, "could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* No public interest outweighs the privacy interests of these third parties. *Id.*

Exemption 7(C) allows broad categorical protection of information that identifies third parties in law enforcement records. *See Nation Magazine v. United States Customs Serv.*, 71 F.3d 885, 896 (D.C. Cir. 1995) (records revealing subjects, witnesses, and informants in law enforcement investigations categorically exempt); *see also SafeCard Servs., Inc. v. SEC*, 926 F.2d at 1205. Individuals have a "strong interest in not being associated unwarrantedly with alleged criminal activity." *Stern v. Federal Bureau of Investigation*, 737 F.2d 84, 92 (D.C. Cir. 1984). Accordingly, the DEA properly withholds the names and other identifying information pertaining to third parties.

The DEA has withheld the names of DEA Special Agents and support staff. Wassom Decl. ¶ 42. The declarant explains that these employees "are assigned to handle tasks relating to the official investigation into the criminal activities of the plaintiff," and that they were and

perhaps still are "in positions of access to information regarding official law enforcement investigations." *Id.* If their identities are released, these persons could become "targets of harassing inquires for unauthorized access to information pertaining to ongoing and closed investigations." *Id.* For these same reasons, the DEA also withholds the names of a DEA Task Force Agent, two Minnesota Bureau of Criminal Apprehension Special Agents, and a Captain of the Hennepin County, Minnesota Sheriff's Department. *Id.* ¶ 43. In all cases, the privacy interests of these persons outweigh public interest in disclosing their identities. *Id.* ¶¶ 42-43.

The DEA's position is fully supported by the relevant caselaw.[7] Deletion of the names of federal, state and local law enforcement personnel under similar circumstances is routinely upheld.[8] *See Lesar v. United States Dep't of Justice*, 636 F.2d 472, 487 (D.C. Cir. 1980) (finding legitimate interest in preserving the identities of government officials where disclosure could subject them to annoyance or harassment in either their official or private lives); *see Pray v. Dep't of Justice*, 902 F. Supp. 1, 3 (D.D.C. 1995), *aff'd in relevant part*, 1996 WL 734142 (D.C. Cir. Nov. 20, 1996) (finding possibility of animosity toward FBI agents outweighed any possible benefit from disclosure).

---

[7]     The DEA's arguments apply as well to the decisions of the Executive Office for United States Attorneys and the United States Marshals Service to withhold information under Exemption 7(C). *See* Wassom Decl. Ex. I-J.

[8]     The DEA invokes Exemption 7(C) in conjunction with Exemption 7(F) to justify its decision to withhold the names and identities of these same law enforcement officers. Wassom Decl. ¶¶ 49-52. Exemption 7(F) protects from disclosure information contained in law enforcement records that "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). Because the Court concludes that DEA properly invoked Exemption 7(C) with respect to the same information, the Court need not reach the applicability of Exemption 7(F). *See Simon v. Dep't of Justice*, 980 F.2d 782, 785 (D.C. Cir. 1994).

b.  Exemption 7(D)

Exemption 7(D) protects from disclosure records or information compiled for law

enforcement purposes that:

> could reasonably be expected to disclose the identity of a confidential
> source, including a State, local, or foreign agency or authority or any
> private institution which furnished information on a confidential
> basis, and, in the case of a record or information compiled by a
> criminal law enforcement authority in the course of a criminal
> investigation. . ., information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D).  There is no assumption that a source is confidential for purposes of

Exemption 7(D) whenever a source provides information to a law enforcement agency in the

course of a criminal investigation.  *See United States Dep't of Justice v. Landano*, 508 U.S. 165,

181 (1993).  Rather, a source's confidentiality is determined on a case-by-case basis.  *Id*. at 179-

80.  "A source is confidential within the meaning of 7(D) if the source provided information

under an express assurance of confidentiality or in circumstances from which such an assurance

could reasonably be inferred."  *Williams v. Federal Bureau of Investigation*, 69 F.3d 1155, 1159

(D.C. Cir. 1995) (citing *Landano*, 508 U.S. at 170-74).

The DEA withheld under Exemption 7(D) information provided to the Minnesota

Department of Public Safety, Bureau of Criminal Apprehension, by a confidential informant

regarding the drug-related activities of plaintiff and third parties.  Wassom Decl. ¶¶ 46-47.  In

this situation, the Court must determine "whether the particular *source* spoke with an

understanding that the communication would remain confidential."  *Landano*, 508 U.S. at 172

(emphasis in original).  The nature of the crime investigated and the informant's relation to it are

the most important factors in determining whether implied confidentiality exists.  *Id*. at 179-80;

-13-

*Quiñon v. FBI*, 86 F.3d 1222, 1231 (D.C. Cir. 1996).

The declarant states that plaintiff was convicted of conspiracy to distribute crack cocaine. Wassom Decl. ¶ 48.  From this fact, she declares it "reasonable to infer that the individuals who provided information about the plaintiff would fear for their safety if their identities or the information they provided was revealed, since violence is inherent in the trade of illicit substances such as crack cocaine."  *Id.*  The declarant further states that release of these sources' names  could jeopardize DEA operations, presumably by deterring their participation and that of other persons who could be needed in future criminal investigations.  *Id.*

Again, relevant caselaw supports the DEA's decision.  Confidentiality has been implied in situations where the crime is related to the illegal drug trade, because of the violence and the risk of reprisal attendant to this type of crime.  *Mays v. DEA*, 234 F.3d 1324, 1329-30 (D.C. Cir. 2001) (court concluded that violence and risk of retaliation attendant to a drug conspiracy to distribute crack and powder cocaine warrant an implied grant of confidentiality).

## D. Segregability

If a record contains information that is exempt from disclosure, any reasonably segregable information must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions.  *Trans-Pacific Policing Agreement v. United States Customs Service*, 177 F.3d 1022 , 1026-27 (D.C. Cir. 1999); 5 U.S.C. § 552(b).  The court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof."  *Powell v. United States Bureau of Prisons*, 927 F.2d 1239, 1242 n.4 (D.C. Cir.1991) (quoting *Church of Scientology  v. Dep't of the Army*, 611 F.2d 738, 744 (9th Cir. 1979)).

-14-

There are four instances where, although plaintiff's name or a reference to plaintiff appears in one place on each page, the DEA withheld the page in its entirety.  *See* Wassom Decl. ¶¶ 57, 60, 61, & 63.  The declarant adequately explains that the reference to plaintiff is inextricably intertwined with information about third parties in three of these instances, such that no segregable information on these pages can be released.  *Id*. ¶¶ 60, 61, & 63.  In the fourth instance, although plaintiff's name is listed as a criminal associate in one place, the DEA opted to withhold the document in full rather than undergo the time and expense of redacting all the information on that page except for plaintiff's name.  *See id.* ¶¶ 54-57.

Having reviewed defendant's declarations and *Vaughn* index, the Court concludes that the DEA has withheld only those records or portions of records that fall under claimed Exemptions 2, 7(C), and 7(D), and adequately has fulfilled its segregability obligation.

### III.   CONCLUSION

The Court concludes that the DEA has conducted a reasonable and adequate search for records responsive to plaintiff's FOIA request, and has released all information other than that properly withheld under Exemptions 2, 7(C) and 7(D).  Accordingly, the Court will grant defendant's motion for summary judgment.  An Order consistent with this Memorandum Opinion will be issued separately on this same date.


_____/s/_____
JOHN  D.  BATES
United States District Judge

Date:  January 27, 2006

-15-